IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01404-PAB-KLM

SOPHIA ALESSANDRA EIM,

    Plaintiff,

v.

CRF FROZEN FOODS LLC,
COSTCO WHOLESALE CORPORATION,
R.D. OFFUTT COMPANY,
R.D. OFFUTT COMPANY-NORTHWEST,
R.D. OFFUTT FARMS CO., and
DOES 1-25,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' R.D. Offutt Company, R.D. Offutt Farms Co., and R.D. Offutt Company-Northwest Joint Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 23]. The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

On or about April 20, 2016, plaintiff became ill after consuming frozen vegetables grown, processed, packaged, and distributed by defendants CRF Frozen Foods, LLC, Costco Wholesale Corporation, R.D. Offutt Company, and R.D. Offutt Company-Northwest. Docket No. 4 at 6, ¶¶ 34-39. On April 23, 2016, CRF Frozen Foods LLC

---

[1]The facts stated below are taken from the complaint, Docket No. 4, and presumed to be true for purposes of defendants' motion to dismiss.

issued a recall of several types of frozen vegetables potentially contaminated by Listeria.  *Id.* at 4, ¶ 9.  After additional medical testing, doctors determined that plaintiff's symptoms were the result of a Listeria infection.  *Id.* at 6, ¶ 40.

Plaintiff filed this lawsuit in the District Court for Boulder County, Colorado on May 10, 2018.  Docket No. 1-2 at 2.  The complaint asserts seven claims against defendants CRF Frozen Foods LLC ("CRF"), Costco Wholesale Corporation ("Costco"), R.D. Offutt Company ("RDO Company"), R.D. Offutt Company - Northwest ("RDO Northwest"), R.D. Offutt Farms Co. ("RDO Farms"), and Does 1-25: (1) breach of express warranty; (2) breach of implied warranty for a particular purpose; (3) breach of implied warranty of merchantability; (4) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; (5) strict product liability; (6) negligent product liability; and (7) negligence.  Docket No. 4 at 7-14.  On June 6, 2018, defendants CRF, RDO Company, RDO Northwest, and RDO Farms removed the case to this Court on the basis of diversity jurisdiction.  Docket No. 1 at 3, ¶ 10.[2]  On July 3, 2018, defendants RDO Company, RDO Northwest, and RDO Farms (collectively, the "RDO defendants") moved to dismiss the claims asserted against them for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Docket No. 23.  Plaintiff filed a response to the motion on August 9, 2018, Docket No. 31, to which the RDO defendants replied on August 23, 2018.  Docket No. 32.

---

[2]Although Costco did not join in the notice of removal, the removing defendants stated that all defendants had "joined in or consented to the removal of the case." Docket No. 1 at 3, ¶ 9.

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).[3] The Court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

## III. ANALYSIS

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially

---

[3] The extent of a plaintiff's burden to establish personal jurisdiction and the scope of a court's review "depend in part on the nature of the district court's response to defendants' motion seeking dismissal for lack of personal jurisdiction." *Id.* at 1069. Here, neither party has requested a hearing on the issue of personal jurisdiction. Accordingly, the Court will exercise its discretion to resolve defendants' motion based on the documents submitted by the parties. *See id.* at 1069 (noting that a district court has the discretion to resolve a motion to dismiss for lack of personal jurisdiction "in a variety of ways – including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself").

confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Where general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such

minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105.

The parties' dispute in this case focuses on the "minimum contacts" requirement. The RDO defendants are a group of related entities involved in the production and distribution of agricultural products. *See* Docket No. 4 at 3, ¶¶ 4-5; Docket No. 23-1 at 1, ¶ 3 (stating that RDO Company is the parent company of RDO Northwest); Docket No. 23-2 at 2, ¶ 4 (stating that RDO Farms is a parent company of RDO Northwest); Docket No. 23-3 at 1, ¶ 3 (stating that RDO Northwest is a subsidiary of RDO Company and RDO Farms). According to declarations submitted by the RDO defendants, the RDO defendants are not registered to do business in Colorado, do not maintain a physical presence in Colorado, do not maintain agents for service of process in Colorado, and do not have any employees in Colorado. Docket No. 23-1 at 2, ¶¶ 9-13;

5

Docket No. 23-2 at 2, ¶¶ 10-14; Docket No. 23-3 at 2-3, ¶¶ 12-17.[4]  While plaintiff does not dispute these assertions, she argues that the Court may exercise personal jurisdiction over the RDO defendants based on their subsidiaries' contacts with Colorado.  *See* Docket No. 31 at 1 (arguing that "R.D. Offutt Company has purposely directed its activities in the State of Colorado through its subsidiaries").[5]  Plaintiff focuses on three sets of corporate relationships: (1) the relationship between RDO Company and CSS Farms LLC ("CSS Farms"); (2) the relationship between RDO Company, Farm Fresh Direct LLC ("Farm Fresh Direct"), and Growers Sales and Marketing, LLC d/b/a Farm Fresh Direct of America; and (3) the relationship between the RDO defendants and CRF.  *See* Docket No. 31 at 4-5.

## A.  RDO Defendants' Relationship With CSS Farms

Plaintiff asserts that RDO Company "built a seed potato operation in Colorado City, Colorado around 2006 called CSS Farms," which grew seeds for Frito-Lay, a company whose "products [are] widely distributed to Colorado consumers."  Docket No.

---

[4]In her complaint, plaintiff alleges that the RDO defendants were manufacturers, distributors, and sellers of agricultural products in Colorado.  Docket No. 4 at 3, ¶¶ 4-5.  She further asserts that the RDO defendants' business contacts in Colorado "bring them within the reach of Colorado's long-arm statute."  *Id.*, ¶ 6.  The Court finds these allegations too conclusory and non-specific to support the exercise of personal jurisdiction.  Moreover, to the extent these allegations are controverted by defendants' affidavits, they will not be taken as true for purposes of the motion to dismiss.  *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017).

[5]Plaintiff does not specify whether defendants' "minimum contacts" with Colorado support the exercise of general jurisdiction, specific jurisdiction, or both.  The Court will therefore evaluate whether plaintiff has made a prima facie showing of either form of personal jurisdiction.

6

31 at 4.[6] In support of these assertions, plaintiff cites a 2006 article from *Agweek* which states that

> [t]he company recently built a seed potato operation in Colorado City, Colo., that provides disease-free stem cuttings for his potato operations nationwide as well as for others. Half of the seed grown for potato snack giant Frito-Lay comes from Offutt's CSS Farms.

Docket No. 31-2 at 2. Defendants respond that the minimum contacts between CSS Farms, "a farming company Ron Offutt once held a partial interest in," subsidiaries of RDO Farms, and Colorado residents do not "even remotely relate to the events that gave rise to this litigation." Docket No. 32 at 5. Defendants also submit a declaration from Loren Stahl, Director of Risk Management for RDO Company, clarifying the relationship between the various RDO defendants and CSS Farms. *See* Docket No. 32-2. According to the declaration, the only connection between the RDO defendants and CSS Farms is the fact that Ron Offutt once held an ownership interest in CSS Farms. *See id.* at 3-4.[7] However, Mr. Stahl states that Mr. Offutt "sold his entire interest in CSS Farms LLC in August 2007." *Id.* at 3, ¶ 10.

The Court finds that plaintiff has failed to make a prima facie showing of either general or personal jurisdiction based on the RDO defendants' relationship with CSS Farms. Though not clear, the Court interprets plaintiff's response as asserting three

---

[6]Plaintiff's response relies on a variety of articles apparently gleaned from the internet. While defendants challenge the relevance of the information contained in the articles, defendants do not object to the foundation of the articles or accuracy of the information in them.

[7]Defendants' names and the internet articles submitted by plaintiff suggest that Ron Offutt holds an ownership interest in the RDO entities. *See generally* Docket No. 31-2. However, neither the well-pled allegations nor the declarations submitted by defendants establish this fact.

7

theories of personal jurisdiction based on RDO Company's relationship with CSS Farms: (1) a direct availment theory, under which RDO Company has sufficient direct contacts with Colorado because it "built" CSS Farms; (2) an agency theory, under which CSS Farms' contacts with Colorado as agent for RDO Company can be imputed to RDO Company; and (3) an alter ego theory, under which all of CSS Farms' contacts with Colorado can be imputed to RDO Company. The Court does not find any of these theories persuasive.

In support of a direct availment theory, plaintiff suggests that RDO Company "built" CSS Farms in 2006. Docket No. 31 at 4. Plaintiff relies on the internet article from *Agweek*, which states that "[t]he company . . . built a seed potato operation in Colorado City." Docket No. 31-2 at 2. However, the article does not draw a clear distinction between Mr. Offutt and RDO Company or provide any detailed information regarding the ownership structure of CSS Farms. As a result, the article is insufficient to contradict defendants' evidence showing that CSS Farms was built by Mr. Offutt, not RDO Company. *See* Docket No. 32-2 at 4; *Weisler v. Comm. Health Sys., Inc.*, 2012 WL 4498919, at *6 (D.N.M. Sept. 27, 2012) (finding "unverified, uncertified newspaper article" insufficient to demonstrate purposeful availment where "[t]he article . . . provide[d] absolutely no information about the ownership structure of the Hospital, the role of Defendants with respect to the Hospital, or how Plaintiff's claims purportedly arose out of Defendants' alleged contact with New Mexico"); *see also Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (finding newspaper articles that "referred to Hyperion/Disney as publisher of *The Washingtonienne*" insufficient to show that "Disney control[led] Hyperion").

Plaintiff's allegations and evidence also do not support an agency theory of jurisdiction. To succeed under this theory, plaintiff would have to show that CSS Farms had actual or apparent authority to act on behalf of RDO Company. *See Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, No. 09-cv-01767-CMA-KLM, 2010 WL 845927, at *6 (D. Colo. Mar. 9, 2010); *see also Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (noting that "[a]gency relationships . . . may be relevant to the existence of *specific* jurisdiction" in that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there"). Plaintiff has made no such showing. The mere fact that Mr. Offutt may have held an ownership interest in both entities at some point in the past does not demonstrate that CSS Farms was an agent of RDO Company for purposes of personal jurisdiction.[8]

Finally, plaintiff has not provided any basis for imputing CSS Farms' Colorado contacts to the RDO defendants under an alter ego theory. Plaintiff has not established that there is any corporate relationship between the RDO defendants and CSS Farms. According to Mr. Stahl, the RDO defendants and CSS Farms are distinct corporate entities. *See* Docket No. 32-2 at 4. Even assuming RDO Company could be considered the parent corporation of CSS Farms, plaintiff has made no showing that CSS Farms was "doing the business of the parent." *Warad West, LLC v. Sorin CRM*

---

[8]Plaintiff also cannot establish specific jurisdiction based on an agency theory because she has not shown that CSS Farms' contacts with Colorado "even remotely relate to the events that gave rise to this litigation," namely, an outbreak of Listeria in frozen vegetables produced by CRF and sold by Costco. Docket No. 32 at 5; *see also* Docket No. 4 at 4-6, ¶¶ 9-35; *Old Republic Ins. Co.*, 877 F.3d at 904 ("Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state.").

9

*USA Inc.*, 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) (internal quotation marks omitted). In deciding whether to pierce the corporate veil to exercise jurisdiction over a non-resident parent corporation based on the forum contacts of its subsidiary, courts consider a number of factors, including whether

> (1) [t]he parent owns all the stock; (2) both [entities] have common directors and officers; (3) the parent finances the subsidiary; (4) the parent causes the subsidiary's incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays salaries or expenses of the subsidiary; (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary; (8) directors and officers do not act independently in the interests of the subsidiary; (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed; (10) distinctions between the parent and subsidiary . . . are disregarded or confused; [and] (11) subsidiaries do not have full boards of directors.

*Griffith v. SSC Pueblo Belmont Operating Co. LLC*, 381 P.3d 308, 313 (Colo. 2016) (internal quotation marks and bracket omitted); *see also BASF Corp. v. Willowood, LLC*, No. 18-cv-00268-CMA-STV, 2019 WL 186406, at *4 (D. Colo. Jan. 14, 2019) (stating that "facts concerning the amount of control exercised by the corporate parent over its subsidiary are relevant" to an alter ego theory of personal jurisdiction).[9] Plaintiff's evidence and well-pled allegations do not address any of these factors. As a

---

[9] The parties do not clearly address which state's law governs the veil piercing analysis with respect to CSS Farms. However, because CSS Farms appears to be a Colorado entity, *see* Docket No. 31 at 4 (asserting that RDO Company "built a seed potato operation in Colorado City, Colorado . . . called CSS Farms"); Docket No. 32-2 at 4 (indicating that CSS Farms operates a potato seed greenhouse in Colorado), both parties would likely ask that the Court apply Colorado law. *See* Docket No. 31 at 3 (citing *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007), for the proposition that "a nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the nonresident defendant's agent" (internal quotation marks omitted)); Docket No. 32 at 9 (arguing that, "[b]ecause Defendant CRF Frozen Foods, LLC is organized under Delaware law, Delaware law governs the inquiry into the piercing of the corporate veil").

result, plaintiff has failed to make a prima facie showing of personal jurisdiction based on a theory that CSS Farms was the alter ego of the RDO defendants.[10]

### B. RDO Defendants' Relationship With Farm Fresh Direct and Growers

Plaintiff also seeks to establish jurisdiction based on the RDO defendants' relationship with Farm Fresh Direct, LLC and Growers Sales and Marketing, LLC d/b/a Fresh Direct of America, stating that RDO Company "is an owner of Farm Fresh Direct and utilizes the entity to ship its potatoes throughout the United States." Docket No. 31 at 4. However, plaintiff does not provide any evidence or well-pled allegations to support this assertion. The article on which she relies indicates that RDO Company's "O'Neill, NE, and Winnemucca, NV, potato operations" merged with Farm Fresh Direct to create Farm Fresh Direct of America. Docket No. 31-3 at 1; *see also* Docket No. 31-5 at 1. According to Mr. Stahl's declaration, the O'Neill and Winnemucca "operations" are actually Winnemucca Farms LLC and Elkhorn Farms LLC – separate subsidiaries of RDO Farms. Docket No. 32-2 at 3, ¶¶ 7-8. There is thus no direct affiliation between the RDO defendants – RDO Company, RDO Farms, and RDO Northwest – and Farm Fresh Direct. *See id.* at 4; *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (stating, for purposes of personal jurisdiction, that a "holding or parent company has a separate corporate existence and is treated separately from the

---

[10]The mere fact that Mr. Offutt once held an ownership interest in CSS Farms does not justify piercing the corporate veil for purposes of personal jurisdiction. *See Powers v. Emcon Assocs., Inc.*, No. 14-cv-03006-KMT, 2017 WL 4075766, at *3 (D. Colo. Sept. 14, 2017) (noting that no single factor is determinative of the alter ego analysis); *Creech v. P.J. Wichita, L.L.C.*, 2017 WL 914810, at *5 (D. Kan. Mar. 8, 2017) (finding "common ownership alone . . . insufficient to show that . . . corporate entities should be disregarded").

subsidiary in the absence of circumstances justifying disregard of the corporate entity" (internal quotation marks and bracket omitted)).

As with CSS Farms, plaintiff also has not presented any evidence or allegations demonstrating that Farm Fresh Direct is the mere agent or alter ego of the RDO defendants. To the extent that the article discussing the Farm Fresh Direct merger suggests a close relationship between RDO Farms, Winnemucca Farms LLC, and Elkhorn Farms LLC, see Docket No. 31-5 at 1 (quoting RDO Company's CEO as stating that "[t]he partnership with Farm Fresh . . . will greatly enhance these two operations' future potential"); Docket No. 32 at 10 (acknowledging that statements in article may "suggest a close connection between R.D. Offutt Company (now R.D. Offutt Farms Co.) and its subsidiaries"), it does not provide any specific facts regarding "the amount of control exercised by [RDO Farms] over its subsidiar[ies]." *BASF Corp.*, 2019 WL 186406, at *4. Accordingly, the article does not establish a prima facie case of personal jurisdiction under an agency or an alter ego theory.

Plaintiff's attempt to show direct contacts between the RDO defendants and Colorado by virtue of their relationship with Farm Fresh Direct is also unavailing. Plaintiff cites the "regular and continuous" communications between RDO Company, Farm Fresh Direct, and Farm Fresh Direct of America in Colorado related to the Farm Fresh merger agreement. Docket No. 31 at 5. These communications allegedly included "[m]eetings and discussions regarding the merger and contracts between the companies," which took place in Colorado. *Id.* However, plaintiff's description of these communications is not supported by allegations in the complaint or by any evidence submitted in opposition to defendants' motion. More importantly, there has been no

showing that any contacts between the RDO defendants and Colorado in relation to the merger agreement were so "continuous and systematic as to render [the RDO defendants] essentially at home in" the state for purposes of general jurisdiction. *Daimler AG*, 571 U.S. at 139 (internal quotation marks omitted); *Old Republic Ins. Co.*, 877 F.3d at 904 (noting that "courts impose a more stringent minimum contacts test" for general jurisdiction); *cf. Sea Eagle Ford, LLC v. Texas Quality Well Serv., LLC*, No. 17-cv-02141-PAB-KMT, 2018 WL 4352011, at *3 (D. Colo. Sept. 12, 2018) (finding that communications sent by defendant to plaintiff in Colorado in connection with contractual relationship did not "rise to the level of continuing and wide-reaching contacts with Colorado that [could] support [specific] personal jurisdiction" (internal quotation marks omitted)). Nor has plaintiff established the requisite connection between the Farm Fresh merger agreement and the Listeria outbreak to support an exercise of specific jurisdiction. *See* Docket No. 32-2 at 3, ¶¶ 14-16 (stating that "Farm Fresh Direct of America is engaged in the sales and marketing of fresh potatoes" but "did not supply products to CRF Frozen Foods LLC"); *see also Old Republic Ins. Co.*, 877 F.3d at 904 (noting that a "plaintiff's injuries must arise out of the defendant's forum-related activities" (internal quotation marks and bracket omitted)). As a result, plaintiff has not made a prima facie case of personal jurisdiction based on the RDO defendants' relationship with Farm Fresh Direct.

### C. RDO Defendants' Relationship With CRF Frozen Foods

Plaintiff argues that this Court has personal jurisdiction over the RDO defendants because they used CRF to distribute their products in Colorado. Docket No. 31 at 5.

The Court finds this argument unsupported. According to Mr. Stahl, RDO Northwest is a member of CRF; however, the two companies are operated as distinct business entities with separate records, finances, and insurance policies. Docket No. 23-3 at 2, ¶¶ 6-10. Mr. Stahl further states that none of the RDO defendants has ever controlled the management of CRF's operations, including its manufacturing, processing, and distribution of frozen vegetables. Docket No. 23-1 at 2, ¶ 7; Docket No. 23-2 at 2, ¶ 8; Docket No. 23-3 at 2, ¶ 11.

Plaintiff attempts to show that the RDO defendants exercised control over CRF by citing a joint venture between J.R. Simplot and RDO Company to re-purpose a processing facility previously owned by CRF. *See* Docket No. 31 at 5. She makes the speculative assertion that CRF's processing facility would not have been transferred to J.R. Simplot and RDO Company if the companies were truly independent and accords significant weight to the fact that RDO Company and J.R. Simplot did not purchase CRF in conjunction with the "transfer" of the processing facility. Docket No. 31 at 5-6 (arguing that, if there was true interdependence between the companies, CRF's "business and assets would have been sold to the highest bidder" rather than transferred to J.R. Simplot and RDO Company's joint venture). However, plaintiff does not clearly explain how this fact demonstrates control. In any event, the article upon which plaintiff relies does not support her assertion that the processing facility was merely "transferred" to J.R. Simplot and RDO Company. *See* Docket No. 31-6 at 2 ("Even though J.R. Simplot is taking over the CRF's building, it did not buy the company during the 25-acre property *sale*." (emphasis added)). Plaintiff therefore has not shown that the RDO defendants' relationship with CRF supports the exercise of personal

14

jurisdiction.[11]

## IV. ATTORNEY'S FEES

The RDO defendants request an award of attorney's fees under Colo. Rev. Stat. § 13-17-201. Docket No. 23 at 9.[12] Section 13-17-201 provides, in relevant part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Colo. Rev. Stat. § 13-17-201. Thus, the statute requires an award of reasonable attorney's fees "when two conditions are met: (1) the action lies in tort; and (2) the action is dismissed pursuant to Rule 12(b)." *Building on Our Best LLC v. Sentinel Ins.*

---

[11]While it is not clear whether plaintiff is attempting to establish jurisdiction under a direct availment, agency, or alter ego theory, plaintiff's failure to show that the RDO defendants exercised control over CRF's distribution efforts is fatal to her ability to establish jurisdiction under any of these theories. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 878, 887 (2011) (plurality op.) (finding foreign manufacturer's contacts with forum state insufficient to establish personal jurisdiction under a stream of commerce theory where there was no evidence showing that the U.S. distributor was under the manufacturer's control); *BASF Corp.*, 2019 WL 186406, at *4 (explaining that "facts concerning the amount of control exercised by the corporate parent over its subsidiary" are relevant to both the agency and alter ego theories of personal jurisdiction). Moreover, to the extent plaintiff is relying on the stream of commerce doctrine, *see* Docket No. 31 at 6 (noting that there is jurisdiction under Georgia's long-arm statute "[w]here a corporation . . . places its products in channels of international commerce knowing full well that normal product migration through the distributive chain will inevitably bring a significant number of its products to the retail market in Colorado"), she does not address any of the leading Supreme Court cases on stream of commerce theory or make an effort to fit the facts of this case within those precedents.

[12]Plaintiff did not address the RDO defendants' request for attorney's fees in her response. *See generally* Docket No. 31.

*Co. Ltd.*, No. 15-cv-00669-RBJ, 2016 WL 1756488, at *2 (D. Colo. May 3, 2016).[13] In determining whether an action lies in tort, courts "focus on the manner in which claims are pleaded." *Dubray v. Intertribal Bison Co-op*, 192 P.3d 604, 607 (Colo. App. 2008). Where an action contains a mix of tort and non-tort claims, a court should award attorney's fees under § 13-17-201 if the "'essence of the action' is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims)." *Gagne v. Gagne*, 338 P.3d 1152, 1168 (Colo. App. 2014) (internal quotation marks omitted).

The Court finds that the RDO defendants are entitled to an award of reasonable attorney's fees under § 13-17-201. Because four out of seven of the claims asserted against the RDO defendants allege torts under Colorado law, *see* Docket No. 4 at 10-13 (asserting claims for strict product liability, negligent product liability, negligence, and violation of the CCPA); *Building on Our Best LLC*, 2016 WL 1756488, at *3 (finding that a "claim alleging a violation of the CCPA is a tort claim" under Colorado law), the "'essence of the action' is tortious in nature." *Gagne*, 338 P.3d at 1168; *see also US Fax Law Ctr., Inc.*, *v. Henry Schein, Inc.*, 205 P.3d 512, 518 (Colo. App. 2009) (holding that case was primarily a tort action where three of the four counts alleged torts under Colorado law); *Dubray*, 192 P.3d at 607 (upholding award of attorney's fees under Colo.

---

[13]Notwithstanding the language of the statute, Colo. Rev. Stat. § 13-17-201 applies "with equal force when a federal court dismisses a pendent state tort [claim] pursuant to [Fed. R. Civ. P. 12(b)]." *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 n.6 (10th Cir. 2000); *Advanced Career Techs., Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1107, 1110 (D. Colo. 2015) (finding that the defendant was entitled to attorney's fees under § 13-17-201 where the plaintiff's claims were dismissed pursuant to Fed. R. Civ. P. 12(b)(2)).

Rev. Stat. § 13-17-201 where six out of eight claims asserted against the defendants were pleaded as tort claims). Additionally, all claims against the RDO defendants are subject to dismissal under Fed. R. Civ. P. 12(b)(2). *See Torres v. Am. Family Mut. Ins. Co.*, 606 F. Supp. 2d 1286, 1287 (D. Colo. 2009) (noting that § 13-17-201 "permit[s] an award of fees in circumstances where all claims against a single defendant are dismissed on Rule 12 grounds, even though claims continue against other defendants").

**V. CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendants' R.D. Offutt Company, R.D. Offutt Farms Co., and R.D. Offutt Company-Northwest Joint Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 23] is **GRANTED**. It is further

**ORDERED** that plaintiffs' claims against defendants R.D. Offutt Company, R.D. Offutt Farms Co., and R.D. Offutt Company-Northwest are dismissed for lack of personal jurisdiction. It is further

**ORDERED** that defendants R.D. Offutt Company, R.D. Offutt Farms Co., and R.D. Offutt Company-Northwest are dismissed from this lawsuit. It is further

**ORDERED** that defendants R.D. Offutt Company, R.D. Offutt Farms Co., and R.D. Offutt Company-Northwest are awarded their reasonable attorney's fees under Colo. Rev. Stat. § 13-17-201. Within fourteen days of this order, defendants shall file a motion and affidavit in accordance with D.C.COLO.LCivR 54.3. Within twenty-one days

of receiving defendants' motion, plaintiff may file a response.

DATED March 26, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge